**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

JOSEPH WILLIAM FLYTHE,           )
                                 )
                Plaintiff,       )
                                 )
        v.                       )        1:17CV591
                                 )
NANCY A. BERRYHILL,              )
Acting Commissioner of Social    )
Security,                        )
                                 )
                Defendant.       )

**MEMORANDUM OPINION AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff, Joseph William Flythe, brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Acting Commissioner of Social Security, denying Plaintiff's claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (Docket Entry 2.) Defendant has filed the certified administrative record (Docket Entry 8 (cited herein as "Tr. __")), and both parties have moved for judgment (Docket Entries 10, 12; see also Docket Entry 11 (Plaintiff's Brief); Docket Entry 13 (Defendant's Memorandum)). For the reasons that follow, the Court should enter judgment for Defendant.

**I.  PROCEDURAL HISTORY**

Plaintiff applied for DIB and SSI.  (Tr. 247-51, 253-60.) Upon denial of those applications initially (Tr. 86-119, 156-67) and on reconsideration (Tr. 120-51, 169-86), Plaintiff requested a

hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 187). Plaintiff, his attorney, and a vocational expert ("VE") attended the hearing. (Tr. 41-85.) The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act. (Tr. 7-22.) The Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-6, 37-38, 391-93), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that disability determination, the ALJ made the following findings later adopted by the Commissioner:

1.   [Plaintiff] meets the insured status requirements of the [] Act through June 30, 2016.

2.   [Plaintiff] has not engaged in substantial gainful activity since February 28, 2011, the alleged onset date.

. . .

3.   [Plaintiff] has the following severe impairments: degenerative disc disease of the cervical and lumbar spine, status post multiple fractures, and chronic obstructive pulmonary disease.

. . .

4.   [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

. . .

5.   . . . [Plaintiff] has the residual functional capacity to perform sedentary work . . . except [Plaintiff] would be limited to standing two to three minutes every hour; occasional balancing, stooping, kneeling, crouching, and crawling; no climbing ladders; and avoiding fumes and hazards.

. . .

6.  [Plaintiff] is unable to perform any past relevant work.

. . .

10. Considering [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [he] can perform.

. . .

11. [Plaintiff] has not been under a disability, as defined in the [] Act, from February 28, 2011, through the date of this decision.

(Tr. 12-21 (bold font and internal parenthetical citations omitted).)

## II.  DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits."  Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006).  However, "the scope of [the Court's] review of [such a] decision . . . is extremely limited."  Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). Plaintiff has not established entitlement to relief under the extremely limited review standard.

### A.  Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).  Instead, the Court "must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard."  Hines, 453 F.3d at 561

(internal brackets and quotation marks omitted). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" <u>Hunter v. Sullivan</u>, 993 F.2d 31, 34 (4th Cir. 1992) (quoting <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." <u>Mastro v. Apfel</u>, 270 F.3d 171, 176 (4th Cir. 2001) (brackets and internal quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." <u>Hunter</u>, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." <u>Mastro</u>, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." <u>Id.</u> at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." <u>Craig v. Chater</u>, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[1] "To regularize the adjudicative process, the Social Security Administration has . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id.

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' i.e., currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent

---

[1] The Act "comprises two disability benefits programs. [DIB] provides benefits to disabled persons who have contributed to the program while employed. [SSI] provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

that the claimant does not possess the residual functional capacity
to (4) perform [the claimant's] past work or (5) any other work."
Albright v. Commissioner of the Soc. Sec. Admin., 174 F.3d 473, 475
n.2 (4th Cir. 1999).[2]  A finding adverse to the claimant at any of
several points in the SEP forecloses an award and ends the inquiry.
For example, "[t]he first step determines whether the claimant is
engaged in 'substantial gainful activity.' If the claimant is
working, benefits are denied.  The second step determines if the
claimant is 'severely' disabled.  If not, benefits are denied."
Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at
each of the first three steps, "the claimant is disabled." Mastro,
270 F.3d at 177.  Alternatively, if a claimant clears steps one and
two, but falters at step three, i.e., "[i]f a claimant's impairment
is not sufficiently severe to equal or exceed a listed impairment,
the ALJ must assess the claimant's residual functional capacity
('RFC')." Id. at 179.[3]  Step four then requires the ALJ to assess

---

[2]  "Through the fourth step, the burden of production and proof is on the
claimant.  If the claimant reaches step five, the burden shifts to the
[Commissioner] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

[3]  "RFC is a measurement of the most a claimant can do despite [the claimant's]
limitations." Hines, 453 F.3d at 562 (noting that administrative regulations
require RFC to reflect claimant's "ability to do sustained work-related physical
and mental activities in a work setting on a regular and continuing basis . . .
[which] means 8 hours a day, for 5 days a week, or an equivalent work schedule"
(internal emphasis and quotation marks omitted)).  The RFC includes both a
"physical exertional or strength limitation" that assesses the claimant's
"ability to do sedentary, light, medium, heavy, or very heavy work," as well as
"nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658
F.2d at 265.  "RFC is to be determined by the ALJ only after [the ALJ] considers
all relevant evidence of a claimant's impairments and any related symptoms (e.g.,
(continued...)

whether, based on that RFC, the claimant can perform past relevant work; if so, the claimant does not qualify as disabled. See id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Commissioner cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[4]

## B.  Assignments of Error

Plaintiff argues that the Court should overturn the ALJ's finding of no disability on these grounds:

1) "[t]he ALJ's physical RFC determination is unsupported by substantial evidence as the ALJ erred in failing to give treating physician Dr. [Jason J.] Van Eyk controlling weight . . . [and] because the ALJ erred in weighing and evaluating the opinion of

---

[3] (...continued)
pain)." Hines, 453 F.3d at 562-63.

[4]  A claimant thus can establish disability via two paths through the SEP.  The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five.  Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis.  See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

consultative examiner Dr. [Peter D.] Morris" (Docket Entry 11 at 3 (bold font and single-spacing omitted)); and

2) "[t]he ALJ's [s]tep [five] finding is not supported by substantial evidence" (id. at 8 (bold font and single-spacing omitted)).

Defendant contends otherwise and seeks affirmance of the ALJ's decision. (Docket Entry 13 at 3-14.)

## 1. Medical Opinion Evidence

In Plaintiff's first assignment of error, he alleges that "[t]he ALJ's physical RFC determination is unsupported by substantial evidence as the ALJ erred in failing to give treating physician Dr. Van Eyk controlling weight." (Docket Entry 11 at 3 (bold font and single-spacing omitted).) In particular, Plaintiff contends that "Dr. Van Eyk's opinion is consistent with his treatment notes and other evidence in the record, including treatment notes from other physicians, objective medical evidence, and opinion evidence supplied by Dr. Morris. Thus, the ALJ's reasons for giv[ing] Dr. Van Eyk little weight are flawed, requiring remand." (Id. at 5.) According to Plaintiff, "[t]he ALJ's failure to appropriately weigh Dr. Van Eyk's opinion is harmful because had Dr. Van Eyk's opinion been afforded controlling weight, the ALJ would have found Plaintiff disabled." (Id. at 7.)

Plaintiff further maintains that "the ALJ erred in weighing and evaluating the opinion of consultative examiner Dr. Morris"

(id. at 3 (bold font and single-spacing omitted)), because the ALJ "improperly cherry picked from Dr. Morris's opinion in [an] attempt to devise an RFC favoring non-disability" (id. at 7). In addition, Plaintiff argues that, "[i]f the ALJ felt that [Dr. Morris's opinion] was not sufficiently functional, the ALJ should have recontacted Dr. Morris for an opinion with functional limitations." (Id. at 8 (citing 20 C.F.R. §§ 404.1512(e), 416.912(e)).) Plaintiff's contentions do not warrant relief.

a. Dr. Van Eyk's Opinions

As a general rule, an ALJ must give controlling weight to the opinion of a treating source regarding the nature and severity of a claimant's impairment. See 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) ("[T]reating sources . . . provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations."). The treating source rule also recognizes, however, that not all treating sources or treating source opinions merit the same deference. The nature and extent of each treatment relationship appreciably tempers the weight an ALJ affords an opinion. See 20 C.F.R. §§ 404.1527(c)(2)(ii), 416.927(c)(2)(ii). Moreover, as subsections (2) through (4) of the rule describe in great detail, a treating

source's opinion, like all medical opinions, deserves deference only if well-supported by medical signs and laboratory findings and consistent with the other substantial evidence in the case record. See 20 C.F.R. §§ 404.1527(c)(2)-(4), 416.927(c)(2)-(4). "[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig, 76 F.3d at 590 (emphasis added).

In this case, on May 27, 2016, Dr. Van Eyk completed an "[RFC] Questionnaire" (Tr. 816-17), diagnosing Plaintiff with chronic pain syndrome, back pain, hip pain, and left leg sciatica (see Tr. 816). Dr. Van Eyk opined that, as a result of those impairments, Plaintiff could lift and/or carry fewer than ten pounds occasionally, could sit for 15 minutes at a time and for a total of one hour in an eight-hour workday, could stand/walk for five minutes at a time and for one hour total in an eight-hour workday, and needed breaks to recline or lie down in excess of regularly scheduled rest periods. (See id.) Dr. Van Eyk also believed that Plaintiff's pain would "constantly" rate as severe enough to interfere with attention and concentration required to perform simple tasks (id.), that Plaintiff could grasp, turn, and twist objects for only 50 percent of the workday with his left hand (see Tr. 817), and that Plaintiff's impairments would cause him to miss work more than four times per month (see id.). Dr. Van Eyk

10

concluded that Plaintiff lacked the "physical[] capab[ility] [to] work[] an 8 hour day, 5 days a week employment on a sustained basis."  (Id.)

On November 8, 2016, Dr. Van Eyk completed a similar "Physical Assessment" (Tr. 1051-52); however, on this check-box form, Dr. Van Eyk opined that Plaintiff's pain "never" rated as severe enough to interfere with attention and concentration required to perform simple tasks, and that Plaintiff could not engage in any lifting and/or carrying of any weight (Tr. 1051).  On this occasion, Dr. Van Eyk indicated that he could not offer an opinion as to Plaintiff's manipulative limitations, because Dr. Van Eyk "[was] not a physical therapist."  (Id.)

The ALJ discussed Dr. Van Eyk's proffered restrictions (see Tr. 16-17), and then assessed the opinions as follows:

> The [ALJ] gives little weight to Dr. Van Eyk's assessments and opinion and finds that they were not consistent with the overall evidence of record, including the notes from his practice, which indicated that [Plaintiff's] physical examinations were unremarkable, his treatment was conservative, and that [Plaintiff's] complaints of pain were generally subjective in nature.

(Tr. 17.)  Plaintiff challenges the ALJ's findings that Dr. Van Eyk's opinions lacked consistency with the overall evidence of record and his own treatment notes.  (See Docket Entry 11 at 5-7.) According to Plaintiff, "[d]uring examinations, Dr. Van Eyk noted that Plaintiff had a slow gait and was unable to walk for long periods of time," prescribed multiple pain medications which

Plaintiff reported did not control his pain, and "noted that Plaintiff had physical therapy, but it did not help." (Id. at 5.) Additionally, Plaintiff maintains that Dr. Van Eyk's opinions harmonize with treatment notes from Plaintiff's hand surgeon, Dr. Laurence Dahners (id. at 6 (citing Tr. 490, 495, 498)); a treatment note from Plaintiff's pain management doctor, Dr. Kevin Barry Shute (id. (citing Tr. 475-76)); the opinions of consultative examiner Dr. Morris (id. at 6-7 (citing Tr. 779, 780, 782, 783)); and the "imaging in the record" (id. at 7 (citing Tr. 415, 416, 475, 476, 506)).

Substantial evidence supports the ALJ's finding that Dr. Van Eyk's opinions conflicted with treatment "notes from his practice, which indicated that [Plaintiff's] physical examinations were unremarkable, his treatment was conservative, and that [Plaintiff's] complaints of pain were generally subjective in nature." (Tr. 17.) The record reflects that Plaintiff visited Dr. Van Eyk on nine occasions between November 2013 and November 2016 with complaints of chronic back, hip, and leg pain. (See Tr. 452-67, 826-44, 1053-56; see also Tr. 441-50 (documenting three visits to Dr. Van Eyk prior to November 2013 for treatment of upper respiratory infections and a swollen eye, and reflecting Plaintiff's denial of musculoskeletal complaints)). On each of those nine occasions, Dr. Van Eyk documented no objective findings regarding Plaintiff's lumbar spine or hips, found Plaintiff "in no

12

acute distress," and noted, regarding Plaintiff's lower extremities, "no joint or limb tenderness to palpation, no edema present, no ecchymosis" (Tr. 453-54, 458-59, 462-63, 466-67, 828, 832, 836-37, 843, 1055), and on five occasions, further documented "range of motion normal, no joint crepitations present, no pain on motion" regarding Plaintiff's lower extremities (Tr. 828, 832, 836-37, 843, 1055). Moreover, Dr. Van Eyk's extreme limitations, in large part, mirror Plaintiff's subjective reports on the date that he requested Dr. Van Eyk to complete disability paperwork. (Compare Tr. 835 (reflecting Plaintiff's statements to Dr. Van Eyk that "[h]e is unable to sit for more than 15 minutes before his pain becomes unbearable," that "[h]e can walk maybe 50 feet before he has to rest due to his pain," that "he could work if he could lie down and do a job doing that," that "he can stand for about 5 minutes," that he "probably cannot do more than an hour of sitting or standing . . . [and] cannot lift much weight due to his pain"), with Tr. 816-17 (Dr. Van Eyk's RFC Questionnaire restricting Plaintiff to lifting and/or carrying fewer than ten pounds occasionally, sitting for 15 minutes at a time and for a total of one hour in an eight-hour workday, and standing/walking for five minutes at a time and for one hour total in an eight-hour workday, and requiring breaks for Plaintiff to recline or lie down in excess of regularly scheduled rest periods).)

13

Regarding Plaintiff's argument that Dr. Van Eyk's opinions harmonize with treatment notes from Drs. Dahners, Shute, and Morris, and diagnostic imaging reports in the record (Docket Entry at 6-7), Plaintiff misinterprets this Court's standard of review. The Court must determine whether the ALJ supported her decision to reject Dr. Van Eyk's opinions with substantial evidence, and not whether other record evidence weighs against the ALJ's analysis, Lanier, 2015 WL 3622619, at *1 ("The fact that [the p]laintiff disagrees with the ALJ's decision, or that there is other evidence in the record that weighs against the ALJ's decision, does not mean that the decision is unsupported by substantial evidence.").

Here, although the ALJ did not specify the objective evidence that failed to support Dr. Van Eyk's opinions in the same paragraph in which she weighed those opinions (see Tr. 16-17), elsewhere in the ALJ's decision, she detailed evidence that did not support Dr. Van Eyk's extreme limitations (see Tr. 16-19). That approach suffices. See McCartney v. Apfel, 28 F. App'x 277, 279-80 (4th Cir. 2002) (rejecting challenge to ALJ's finding for lack of sufficient detail where other discussion in decision adequately supported finding and stating "that the ALJ need only review medical evidence once in his decision"); Kiernan v. Astrue, No. 3:12CV459-HEH, 2013 WL 2323125, at *5 (E.D. Va. May 28, 2013) (unpublished) (observing that, where an "ALJ analyzes a claimant's medical evidence in one part of his decision, there is no

14

requirement that he rehash that discussion" in other parts of his analysis).  In particular, the ALJ noted:

- "Although [Plaintiff's] alleged onset date was February 28, 2011, there was no indication of [Plaintiff] receiving medical treatment after December 1, 2010 through January 31, 2012, a period of nearly a year following the alleged onset date" (Tr. 16);

- On September 9, 2013, Plaintiff underwent hip arthroscopy which resolved his sciatic nerve palsy (Tr. 17);

- On October 13, 2013, "physical examination showed full range of motion of the hip and left ankle without tenderness and with sensation intact; surgical sites were well healed; and his grip showed no deformity in the fingers" (id.);

- A treatment note dated December 27, 2013, "showed that [Plaintiff's] left hand fracture had healed and his hand was completely functional, but he had a dorsal prominence" and, on February 6, 2014, following removal of the prominence, Plaintiff "was doing very well" and "had full painless range of motion of the hand" (id.);

- "On June 6, 2014, August 15, 2014, and June 17, 2016, the [treatment] notes showed that his physical examinations were unremarkable with normal sensation and normal gait" (id.);

- "[O]n June 28, 2014, a consultative examination by Dr. Morris showed that [Plaintiff] was able to fully flex and extend all fingers bilaterally" (Tr. 19); and

- Plaintiff "engaged in work activity after the alleged onset date, including after [his motorcycle] accident [in August 2013].  For example, in December 2013, [Plaintiff] reported that he was working as a mechanic; in January 2014, the notes indicated that [Plaintiff] was assaulted at work; and in June 2014, [Plaintiff] reported that he was working, performing heavy lifting and landscaping" (id.).

The ALJ's above-described analysis confirms that substantial evidence supports her finding that "Dr. Van Eyk's assessments and opinion[s] . . . were not consistent with the overall evidence of record." (Tr. 17.)

b. Dr. Morris' Opinions

Consultative examiners such as Dr. Morris do not constitute treating sources under the regulations, see 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2), and thus their opinions, as a general proposition, do not warrant controlling weight, Turberville v. Colvin, No. 1:11CV262, 2014 WL 1671582, at *6 (M.D.N.C. Apr. 23, 2014) (unpublished) (Auld, M.J.), recommendation adopted, slip op. (M.D.N.C. May 15, 2014) (Eagles, J.). However, the ALJ must nevertheless evaluate consultative opinions using the factors outlined in the regulations, and expressly indicate and explain the weight he or she affords to such opinions. See 20 C.F.R. §§ 404.1527(c), 416.927(c) ("Regardless of its source, [the ALJ] will evaluate every medical opinion [he or she] receive[s]" and where an opinion does not warrant controlling weight, the ALJ must "consider all of the . . . factors [in 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6)] in deciding the weight [to] give to any medical opinion.").

The ALJ here provided a detailed summary of Dr. Morris' findings and opinions:

> On June 28, 2014, [Dr. Morris] performed a consultative physical evaluation on [Plaintiff] for disability

purposes. Based on the evaluation, Dr. Morris noted that
[Plaintiff] had tenderness in the lumbar spine and
musculature of the lower back; he had some tenderness of
the thoracic spine; he had mild tenderness in the left
ankle; straight leg raising was positive on the left side
in the seated position; and he had slight difficulty
opening [a] water bottle and picking up a paper clip with
the left hand. Dr. Morris diagnosed [Plaintiff] with
chronic low back pain due to degenerative disk disease
with left lower extremity radiculopathy; slight
difficulty using the left hand, status post injury and
surgeries; chronic left hip pain, status post injury;
COPD; hypertension; and possible depression. Dr. Morris
opined that [Plaintiff] would have mild limitations
sitting; severe limitations with standing and walking due
to his slow and antalgic gait; an inability to heel, toe,
and tandem walk; decreased range of motion in the lower
back, hips, and left ankle; slightly decreased motor
strength in the left foot; [and] pain and tenderness in
the back, left hip and left ankle; severe limitations in
lifting or carrying due to his slow and antalgic gait;
mild limitations in reaching, handling, feeling and
grasping; and severe postural limitations in bending,
stooping, crouching, and squatting due to his stated
inability to perform postural maneuvers. Dr. Morris
noted it was uncertain if [Plaintiff] would need an
assistive device for ambulation because [Plaintiff] would
not attempt any ambulatory maneuvers without the use of
his cane on the physical examination.

(Tr. 17-18.) The ALJ then weighed Dr. Morris' opinions as follows:

The [ALJ] gives partial weight to Dr. Morris' opinion
because he examined [Plaintiff] and internal medicine was
his area of speciality. The [ALJ] did not give greater
weight to Dr. Morris' opinion because it was not
sufficiently functional in nature and it was based on a
one-time examination. The [ALJ] also notes that although
[Plaintiff] reported [to Dr. Morris] use of a cane and
ambulatory limitations, the evidence of record showed
that his physical examinations were generally
unremarkable with normal gait.

(Tr. 17 (emphasis added).)

Although Plaintiff maintains that "[t]he ALJ . . . improperly

cherry picked from Dr. Morris's opinion in [an] attempt to devise

17

an RFC favoring non-disability" (Docket Entry 11 at 7; see also id. at 8 (accusing ALJ of "picking and choosing the evidence from Dr. Morris's opinion that supported [the ALJ's] own RFC finding")), the ALJ's above-quoted thorough summary of Dr. Morris' findings and opinions, including both those that favor Plaintiff and those that do not, makes clear that Plaintiff's accusation of "cherry picking" misses the mark.

Moreover, in the RFC, the ALJ limited Plaintiff to sedentary exertion, which constitutes the lowest level of exertion in the regulations, see 20 C.F.R. §§ 404.1567, 416.967, further modified the sedentary level of exertion by limiting Plaintiff to two to three minutes of standing per hour, and restricted Plaintiff to only occasional postural movements. (See Tr. 13-14.) Plaintiff has made no attempt to show how the ALJ's full adoption of Dr. Morris' "severe" limitations on Plaintiff's ability to stand, walk, lift, carry, and engage in postural movements (Tr. 783) would have compelled the ALJ to adopt an even more restrictive RFC. (See Docket Entry 11 at 7-8.) That failure precludes relief on this front. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[A] litigant has an obligation to spell out its arguments squarely and distinctly, or else forever hold its peace." (internal quotation marks omitted)); Hughes v. B/E Aerospace, Inc., No. 1:12CV717, 2014 WL 906220, at *1 n.1 (M.D.N.C. Mar. 7, 2014)

(unpublished) ("A party should not expect a court to do the work that it elected not to do.").

Plaintiff next argues that, "[i]f the ALJ felt that [Dr. Morris's opinion] was not sufficiently functional, the ALJ should have recontacted Dr. Morris for an opinion with functional limitations." (Docket Entry 11 at 8 (citing 20 C.F.R. §§ 404.1512(e), 416.912(e)).) However, as argued by the Commissioner (see Docket Entry 13 at 10-11), the regulations relied upon by Plaintiff, "which imposed a duty to recontact on ALJs when the evidence from a treating physician was inadequate to make a disability determination, ha[ve] not been in effect since 2012," Penny v. Berryhill, No. 1:15CV1074, 2017 WL 590343, at *6 (M.D.N.C. Feb. 14, 2017) (unpublished) (Peake, M.J.) (internal quotation marks omitted), recommendation adopted, 2017 WL 1155056 (M.D.N.C. Mar. 27, 2017) (unpublished) (Biggs, J.). Under the applicable regulations, the ALJ must recontact a consultative examiner when the examiner's report qualifies as "inadequate or incomplete." 20 C.F.R. §§ 404.1519p(b), 416.919p(b). Moreover, "the absence of a medical opinion in a consultative examination report will not make the report incomplete." 20 C.F.R. §§ 404.1519n(c)(6), 416.919n(c)(6). Thus, by logical extension, the "[in]sufficiently functional" (Tr. 17) opinions in Dr. Morris' consultative report did not require the ALJ here to recontact Dr. Morris, especially where the ALJ thoroughly considered the entire record to reach her

19

disability determination.  See Dooley v. Commissioner of Soc. Sec., 656 F. App'x 113, 122 (6th Cir. 2016) ("[A]lthough [the consultative examiner] failed to clarify her limitation against "excessive" bending, kneeling, or squatting, this failure does not render her report incomplete . . . because a consultative examiner's report is not rendered incomplete by the absence of a statement about what a claimant can still do despite his limitations."  (citing 20 C.F.R. §§ 404.1519n(c)(6); 416.919n(c)(6))).

In short, the ALJ did not err in his evaluation and weighing of the opinions of Drs. Van Eyk and Morris.

## 2. Step Five Finding

In Plaintiff's second and final assignment of error, he contends that "the hypothetical question [the ALJ] asked to the VE here was incomplete, as it improperly did not include the credited limitations opined by Dr. Van Eyk."  (Docket Entry 11 at 8.) According to Plaintiff, "[h]ad the ALJ included th[o]se limitations, the [VE's] response and available jobs may have been significantly different."  (Id.)  However, as discussed above, the ALJ did not err in his decision to discount the opinions of Dr. Van Eyk.  Accordingly, the ALJ labored under no obligation to adopt all of Dr. Van Eyk's opined limitations in the RFC or the hypothetical questions he directed to the VE.

## III. CONCLUSION

Plaintiff has not established an error warranting relief.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, that Plaintiff's Motion for Judgment Reversing Decision of the Commissioner of Social Security (Docket Entry 10) be denied, that Defendant's Motion for Judgment on the Pleadings (Docket Entry 12) be granted, and that this action be dismissed with prejudice.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

September 20, 2018