# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| JOSEPH WILLIAM FLYTHE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | 1:17CV591 |
| | ) | |
| NANCY A. BERRYHILL, Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

On September 20, 2018, in accordance with 28 U.S.C. § 636(b), the Memorandum Opinion and Recommendation of the United States Magistrate Judge ("Recommendation") was filed and served on the parties in this action. [Docs. #14, 15.] The Magistrate Judge recommended denying Plaintiff's Motion for Judgment Reversing Decision of the Commissioner of Social Security, [Doc. #10], granting Defendant's Motion for Judgment on the Pleadings, [Doc. #12], and dismissing this action with prejudice. Plaintiff Joseph William Flythe timely objected to the Recommendation, [Doc. #16], to which Defendant responded. The Court has reviewed de novo the portions of the Recommendation to which Flythe has objected and assessed for clear error the portions of the Recommendation to which no objection was made. The Recommendation is adopted.

Flythe's objections focus entirely upon the Recommendation's approval of the Administrative Law Judge's ("ALJ's") treatment of the opinion of Dr. Peter D. Morris who performed a consultative physical evaluation of Flythe. Initially before

this Court, Flythe argued that the ALJ "cherry picked from Dr. Morris's opinion in attempt to devise an RFC favoring non-disability." (Pl.'s Br. in Supp. of [His] Mot. at 7 [Doc. #11].) According to Flythe, the ALJ "offered no real explanation as to how" the "severe limitations" in Dr. Morris's opinion are consistent with Flythe's residual functional capacity ("RFC"). (Id. at 8.) And, when the ALJ afforded Dr. Morris's opinion only partial weight because it was "'not sufficiently functional in nature and it was based on a one-time examination'", she "should have recontacted Dr. Morris for an opinion with functional limitations." (Id. (quoting the ALJ's Decision (Administrative Record ("A.R.") 18)).) In his objections, Flythe also highlights the ALJ's statement, at the end of her review of Dr. Morris's opinion, "that although the claimant reported use of cane and ambulatory limitations, the evidence of record showed that his physical examinations were generally unremarkable with normal gait" to which she cited one treatment note as an example, but which Flythe contends is not supported by the weight of the evidence. (Pl.'s Objs. at 2 (citing ALJ's Decision (A.R. 17[1])).)

Dr. Morris examined Flythe on June 28, 2014, at which time Flythe's chief complaint was back pain. (A.R. 779.) Dr. Morris reviewed Flythe's medical records including results of CTs in 2014 of his head, cervical spine, lumbar spine, thoracic

---

[1] Although Flythe repeatedly cites to "T 17" in his Objections, the weight accorded to Dr. Morris's opinion and the ALJ's explanation for affording partial weight are on page 18 of the Administrative Record, as he properly cited in his Brief in Support of His Motion.

2

spine, and chest, abdomen, and pelvis, a chest x-ray, and a 2013 MRI of the lumbar spine. (A.R. 779-80.)  He discussed with Flythe his symptoms and treatment for backpain, COPD, activities of daily living, medications, past surgeries and illness, and family and social histories. (A.R. 780-81.)  Dr. Morris examined Flythe's general appearance, mental status, vital signs, HEENT, neck, lungs, cardiovascular system, abdomen, extremities, skin, range of motion, and neurologic system. (A.R. 781-82.)  During his exam, Flythe "would not attempt any ambulatory maneuvers without the use of his cane". (A.R. 783; see also A.R. 781 (noting that Flythe "chose not to ambulate without the use of his cane", "stated that he would rather not try that because of a risk of falling", and "did not try anything without his cane"), 782 (noting that Flythe "would not try heel, toe, or tandem walking, stating he could not do them" and "stated he could not squat or kneel" and that Dr. Morris "did not test for Romberg [or heel-to-shin] because he would not let go of his cane").)  After making general findings and diagnoses, Dr. Morris offered a functional assessment. (A.R. 782-83.)

> It is estimated that the claimant would have mild limitations with sitting.  It is estimated he would have severe limitations with standing and walking due to his slow and antalgic gait; his stated inability to heel, toe, and tandem walking; he has decreased range of motion in the lower back, hips, and left ankle; a slightly decreased motor strength in the left lower extremity; his atrophy in the left lower extremity; his decreased sensation in the left foot; and his pain and tenderness in the back, left hip, and left ankle.  It is estimated, the claimant would have severe limitations to lifting or carrying due to his slow and antalgic gait; his stated inability to heel, toe, and tandem walking; he has decreased range of motion in the lower back, hips,

3

and left ankle; a slightly decreased motor strength in the left lower extremity; his atrophy in the left lower extremity; his decreased sensation in the left foot; and his pain and tenderness in the back, left hip, and left ankle. It is estimated the claimant would have mild manipulative limitations to reaching, handling, feeling, and grasping on the left. It is estimated he has had no manipulative limitations to reaching, handling, feeling, or grasping on the right. It is estimated he will have severe postural limitations to bending, stooping, crouching, and squatting due to his stated inability to perform postural maneuvers on exam. No visual or communicative limitations are expected.

(A.R. 783.) Dr. Morris then noted, "It is uncertain if an assistive device is necessary for ambulation because the claimant would not attempt any ambulatory maneuvers without the use of his cane on physical examination." (A.R. 783.) After quoting nearly the entirety of Dr. Morris's report, the ALJ accorded Dr. Morris's opinion partial weight because, while he examined Flythe and he is a specialist in internal medicine, his opinion was "not sufficiently functional in nature and it was based on a one-time examination." (A.R. 17-18.) The ALJ then noted, "that although the claimant reported use of cane and ambulatory limitations, the evidence of record showed that his physical examinations were generally unremarkable with normal gait." (A.R. 18 (citing, as an example, Ex. 24F, p. 75).)

Ultimately, the ALJ determined that Flythe's RFC is less than a full range of sedentary work. (A.R. 13.) Specifically, Flythe's RFC is sedentary work, "except [he] would be limited to standing two to three minutes every hour; occasional balancing, stooping, kneeling, crouching, and crawling; no climbing ladders; and avoiding fumes and hazards." (A.R. 13-14.)

4

First, as a general matter, the ALJ did not "cherry pick" from Dr. Morris's opinion in her determination. To the contrary, she considered in detail the extent of Dr. Morris's report and ultimate assessment and then accorded his opinion partial weight. (See A.R. 17-18.)

Next, the ALJ's criticism that Dr. Morris's opinion "was not sufficiently functional in nature" did not trigger her duty to contact Dr. Morris for clarification. The regulations provide that the Commissioner "will contact the medical source who performed the consultative examination" to request missing information or a revised report "[i]f a report is inadequate or incomplete". 20 C.F.R. §§ 404.1519p(b), 416.919p(b). The same regulation explains that a report should "provide[] evidence which serves as an adequate basis for decisionmaking in terms of the impairment it assesses", 20 C.F.R. §§ 404.1519p(a)(1), 416.919p(a)(1), while 20 C.F.R. §§ 404.1519n(c)(1)-(7), 416.919n(c)(1)-(7) provides the elements of a "complete consultative examination". A report "is not rendered incomplete by the absence of a statement about what a claimant can still do despite his limitations." Dooley v. Comm'r of Soc. Security, 656 F. App'x 113, 122 (6th Cir. July 28, 2016) (unpublished); see also 20 C.F.R. §§ 404.1519n(c)(6), 416.919n(c)(6) (explaining that the absence of a medical opinion will not make a report incomplete).

Flythe concedes "that the lack of an opinion within a consultative examiner's report does not render the report incomplete", but he maintains Dr.

5

Morris's opinion is inadequate because it "does not provide an adequate basis for the ALJ to reach a decision", as she herself acknowledged when she described the opinion as "not sufficiently functional in nature". (Pl.'s Objs. at 3-4.) Although the ALJ characterized Dr. Morris's opinion as "not sufficiently functional in nature", his report nevertheless served as an adequate basis for decisionmaking in terms of the impairments it assessed. As described above, Dr. Morris documented results from recent CTs and MRIs and Flythe's report of back pain symptoms and treatment, performed thorough range of motion testing, detailed Flythe's performance in neurologic testing, offered generalized findings, diagnosed Flythe's ailments, and provided a lengthy functional assessment of Flythe's limitations, among other information he included such as a review of Flythe's COPD, activities of daily living, medications, past medical history, history of smoking cigarettes, and general appearance, and assessments of Flythe's mental status, vital signs, HEENT, neck, lungs, cardiovascular system, abdomen, extremities, and skin. Dr. Morris's examination and evaluation of Flythe cannot be described as incomplete – or inadequate. See Cummings v. Colvin, No. 1:14CV520, 2016 WL 698081, *5 (M.D.N.C. Feb. 19, 2016) (finding consultative examiner's report neither inadequate nor incomplete when the physician "documented Plaintiff's medical history and her subjective complaints, performed exhaustive range of motion testing, administered pulmonary function tests, generated a full set of objecting findings regarding Plaintiff's strength and neurological functioning, and offered

opinions regarding limitations on Plaintiff's abilities to do work-related activities") (internal citations omitted), adopted, Order & J. (Mar. 15, 2016). Therefore, the regulations did not require the ALJ to contact Dr. Morris for clarification.

Next, Flythe argues that the ALJ's failure to accord greater weight to Dr. Morris's opinion because it was based on one examination is "not a legitimate reason to give less weight to a consultative examiner" and quotes Smith v. Colvin, No. 4:15-CV-175-RN, 2017 WL 27942, at *8 (E.D.N.C. Jan. 3, 2017), in support. (Pl.'s Objs. at 2-3.) The Smith court recognized the quandary presented when regulations provide as a factor for evaluating medical evidence the length of the treatment relationship, while a consultative examination, by its nature, is limited. 2017 WL 27942, at *8. The court found that "affording little weight to the opinions of [the consultative examiners] because they were one-time examiners, without more, fails to articulate a sufficient basis to discount these assessments." Id. (emphasis added). The facts here are distinguishable from those in Smith. The ALJ explained the content of Dr. Morris's report thoroughly before assessing his opinion partial weight because, not only was it based on a one-time examination, but it was not sufficiently functional. Furthermore, to the extent the opinion was based on Flythe's reported use of a cane and ambulatory limitations, the ALJ found that the medical record suggested otherwise, as does Flythe's reported work after his alleged onset date, as further explained below. In other words, the fact that

the consultation was Flythe's only visit to Dr. Morris was not the only reason the ALJ did not give his opinion more weight.

Moreover, although the regulations require an ALJ to evaluate every medical opinion she receives, 20 C.F.R. §§ 404.1527(c), 416.927(c), they recognize that non-treating sources like consultative examinations are generally given less weight than treating source opinions because treating sources are "most able to provide a detailed, longitudinal picture" of the claimant's impairments "and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations", 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). When determining the weight to accord "any medical opinion", the ALJ considers a number of factors, including the length of the relationship and the frequency of the examination. 20 C.F.R. §§ 404.1527(c), 416.927(c). Here, the ALJ did as the regulations required; she considered, among other factors, the length of the relationship and the frequency of examination in assessing the weight to assign to Dr. Morris's opinion.

Finally, Flythe argues that the ALJ's rejection of Dr. Morris's opinion based on evidence that Flythe's gait was normal is not supported by the evidence or the law. (Pl.'s Objs. at 2.) Specifically, he asserts that, "When the weight of the evidence is so heavily skewed to one side, the ALJ's rejection of the opinion based on limited treatment notes will not be upheld." (Id.) However, the ALJ did not reject Dr. Morris's opinion, nor did she discredit it simply based on the treatment

8

note she cited in support of her criticism of Flythe's reported use of a cane and ambulatory limitations during Dr. Morris's examination. She accorded his opinion partial weight and did so based on additional reasons explained above.

To the extent that her characterization of the record reflecting Flythe's gait is incomplete, Flythe fails to meet his burden of establishing that any error was harmful, see Shinseki v. Sanders, 556 U.S. 396, 409 (2009). "In social security cases, an ALJ's errors are harmless so long as the ALJ's conclusion is supported by substantial evidence in the record and the claimant could not reasonably have been prejudiced by the error." Emrich v. Colvin, 90 F. Supp. 3d 480, 488 (M.D.N.C. 2015). Substantial evidence is that "which a reasoning mind would accept as sufficient to support a particular conclusion." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Id. (quoting Laws, 368 F.2d at 642). Here, any possible error could not reasonably have prejudiced Flythe and substantial evidence supports the weight the ALJ gave to Dr. Morris's opinion.

Flythe contends that there are only three examinations in the entire record that note his gait is normal and those are part of treatment he received for possible lung problems. (Pl.'s Objs. at 2.) He cites to other treatment notes, though, from Dr. Jason Van Eyk, his primary care physician, Dr. Kevin Shute, to whom Dr. Van Eyk referred Flythe for evaluation of pain and whom Flythe saw once, Dr. Morris,

9

and, Jake Ricketson, Psy. D., the psychological consultative examiner who all documented problems with his gait. (Id.)

Flythe is correct in that the treatment note the ALJ cited as an example reflects a June 17, 2016 referral examination for "spots on lung" detected when Flythe was receiving treatment in August 2013 for injuries sustained from a motor vehicle accident. (A.R. 1047-48.) Meanwhile, indeed, Dr. Van Eyk had described Flythe's gait as slow in November and December 2013 and January 2014, Dr. Shute recorded an antalgic gait in January 2014, and Dr. Ricketson observed his gait to be slow in May 2014. (A.R. 452, 457, 461, 475, 738.) During his June 2014 examination of Flythe, Dr. Morris observed that his gait was very slow and antalgic with the use of his cane. (A.R. 782.) Years later, in 2016, Dr. Van Eyk noted that Flythe "had a slow gait and could not walk for long periods of time and he states that this has worsened over time." (A.R. 826, 830, 841, 1053; see also A.R. 835 ("He states the pain . . . is now affecting his gait.").)

Yet, the record also reflects that Flythe engaged in work activity not only after his alleged onset date, but after he was examined by Dr. Morris. His alleged onset date is February 28, 2011, yet nothing in the record reflects any medical treatment from December 2010 through January 31, 2012. (See A.R. 16.) Although Flythe was involved in a motorcycle accident in August 2013 that either precipitated or exacerbated his health problems, in December 2013, he reported that he was working as a mechanic. (A.R. 492.) In January 2014, he sought

treatment after having been assaulted at work. (A.R. 429.) In June 2015, he reported that he was performing heavy lifting and landscaping, (A.R. 873), which at least requires heavy exertion, (A.R. 20). Also in 2015, Flythe worked as a fence estimator. (A.R. 48-50.) All of this work contrasts sharply with Flythe's refusal to do anything during his physical examination with Dr. Morris without his cane, his statements of inability to do certain maneuvers, and his refusal to do those maneuvers.

Moreover, Flythe could not reasonably have been prejudiced by the ALJ's statement, as it pertains to the weight she gave to Dr. Morris's opinion, that the record showed that Flythe's physical examinations were generally unremarkable with normal gait despite his reported use of a cane and ambulatory limitations during his examination. Sedentary work is the lowest level of exertion in the regulations, see 20 C.F.R. §§ 404.1567(a), 416.967(a), and the ALJ determined Flythe's RFC to be less than a full range of sedentary work.

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. §§ 404.1567(a), 416.967(a). As just discussed, Flythe reported engaging in work – as a mechanic, landscape laborer, fence estimator – after his alleged onset date, all of which entailed more than sedentary work and all of which

11

informed the ALJ's RFC determination. (See, e.g., A.R. 13-14, 18, 19.) This record of work contrasts with Flythe's statements to Dr. Morris that he could not heel, toe, or tandem walk or squat or kneel, (A.R. 782), and refusals to ambulate without the use of his cane, (A.R. 781, 782). Flythe's statements and refusals then affected Dr. Morris's opinions of Flythe's severe limitations. While he found Flythe would have severe limitations with standing and walking and lifting or carrying, these opinions were based, in part, on Flythe's "<u>stated</u> inability to heel, toe, and tandem walk[]". (A.R. 783 (emphasis added).) Dr. Morris was "uncertain if an assistive device is necessary for ambulation because [Flythe] would not attempt any ambulatory maneuvers without the use of his cane on physical examination." (A.R. 783.) Furthermore, Flythe has not shown how according any greater weight to the opinions that he would have severe limitations to standing, walking, lifting, carrying would have further limited his RFC which already restricted him to sedentary work and standing only two to three minutes every hour. Similarly, Dr. Morris found that Flythe would have "severe postural limitations to bending, stooping, crouching, and squatting", but that opinion is based solely on Flythe's "<u>stated</u> inability to perform postural maneuvers on exam." (A.R. 783 (emphasis added).) As the Magistrate Judge found, "the ALJ did not err in [her] evaluation and weighing of the opinion[] of" Dr. Morris. (Recommendation at 20.)

For the reasons explained in this Memorandum Opinion, the United States Magistrate Judge's Recommendation is ADOPTED. IT IS HEREBY ORDERED that the Commissioner's decision finding no disability is AFFIRMED, that Plaintiff's Motion for Judgment Reversing Decision of the Commissioner of Social Security, [Doc. #10], is DENIED, that Defendant's Motion for Judgment on the Pleadings, [Doc. #12], is GRANTED, and that this action is DISMISSED WITH PREJUDICE.

This, the 3rd day of June 2019.

/s/ N. Carlton Tilley, Jr.
Senior United States District Judge